# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| **JOTONIA HICKS,** | Case No. 5:09cv00047 |
|     *Plaintiff* | REPORT AND |
| v. | RECOMMENDATION |
| **MICHAEL J. ASTRUE**, | By:    Hon. James G. Welsh |
| Commissioner of Social Security, |         U. S. Magistrate Judge |
|     *Defendant* | |

The plaintiff, Jotonia Hicks, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act, as amended ("the Act"). 42 U.S.C. §§ 1381 *et seq*. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g). The Commissioner's Answer was filed on October 28, 2009 along with a certified copy of the entire record"("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered two days later, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

In her appeal the plaintiff contends the conclusion of the administrative law judge ("ALJ") that she retained the ability to perform a range of unskilled work [1] was based on a failure to consider all

---

[1] *Unskilled work* is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, the agency considers jobs unskilled if the primary work duties are handling, feeding and off-bearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can

of her vocationally relevant non-exertional limitations, including her cognitive limitations, her social and emotional dependence and immaturity, her diminished academic achievement, her limited ability to understand her mental limitations, and her inability to work independently. In response, the Commissioner argues that the ALJ's decision was properly based on the testimony of a vocational witness given in response to a hypothetical question which fairly summarized the plaintiff's vocationally relevant non-exertional limitations. Each party has moved for summary judgment; no written request was made for oral argument, [2] and the case is now before the undersigned for a report and recommended disposition.

## I.    Summary Recommendation

As outlined herein, a thorough review of the administrative record demonstrates that reversal and remand for calculation of SSI benefits is appropriate in this case. The plaintiff's evidence establishes a mental impairment of disabling severity, and the ALJ's contrary residual functional capacity determination was erroneously predicated upon vocational testimony given in response to a hypothetical question which did not account for all of the plaintiff's non-exertional limitations.

## II.    Standard of Review

---

usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs. 20 C.F.R. § 416.968(a).

[2] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to SSI between October 10, 2006 (the date she protectively filed her SSI application) and September 17, 2008 (the date of the Commissioner's final decision). "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

### III.   Administrative History

The record shows that plaintiff protectively filed her application on October 10, 2006, alleging a disability beginning July 1, 2001. (R.10,96-100,105.) In her application and related submissions, the

plaintiff contends that she is unable to work on a regular and sustained basis due a functionally significant learning disability and being "tired all of the time." (R.105-115,117-127.) Her claims was denied, both initially and on reconsideration, and an administrative hearing was held on September 2, 2008. (R.10,20,37-40,53-57,59,62,65-69,71-77,81-91.) At the hearing the plaintiff was present, testified, and was represented by counsel. (R.10,20,23-27,59,64,95) Her mother also testified, and vocational testimony was provided by Andrew Beale, Ph.D. (R.10,20,27-30,31-33,79-80,93-94.) Utilizing the agency's standard sequential evaluation process, [3] the plaintiff's claim was subsequently denied by written administrative decision dated September 27, 2008. (R.10-19.)

At the time of the ALJ's decision, the plaintiff was twenty years of age, [4] and she has no decisionally significant vocational history. (R.12-13, 17,110-111,171.) She has however, significant cognitive limitations. Her academic development was significantly delayed, and she received a special education diploma at age eighteen after attending high school for four years. (R.12-13,23-24,129-142,219-220.) Grade equivalent-wise, her ability to read and do mathematical operations are at a fourth grade (age ten) level, or less. (R.219.)

---

[3] To facilitate a uniform and efficient processing of disability claims, by regulation the agency has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the individual (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the agency's official Listings of Impairments found at 20 C.F.R. Part 4, Subpt. P, Appx. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him or her from doing substantial gainful employment. 20 C.F.R. § 404.1520 and § 416.920. If an individual is found disabled or not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2$^d$ 260, 264-265 (4th Cir. 1981).

[4] At this age the plaintiff is classified as a "*younger person*," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. § 404.1563(c) and § 416.920(c).

In his written decision the ALJ found the plaintiff to have a significant cognitive disorder which was well-documented by intelligence quotient ("IQ") scores in excess of two standard deviations from normal.[5] (R.12-13.) After noting that the plaintiff had no physical, mood or psychiatric disorder, the ALJ assessed her cognitive impairment and concluded that the record did not support a finding that her condition was of sufficient functional severity to meet or equal Listing 12.05.[6] (R.12-15.) Based on his further consideration of the evidence, including the vocational testimony, he concluded that the plaintiff was functionally able to perform unskilled work at a light exertional level which required only "minimal" reading, writing and mathematics. (R.18-19.) A timely request for Appeals Council review was thereafter made; the request was denied, and the decision of the ALJ now stands as the Commissioner's final decision. (R.1-6.) *See* 20 C.F.R. § 416-1481.

## IV.   Evidence

The plaintiff's mental status and related records in this case present a consistent assessment since 2001. She was fourteen years of age at that time and had attended the seventh grade in special classes. (R.170-171.) On the basis of a full-scale mental assessment, including a WISC-III [7]

---

[5] With normally distributed IQ test, the average (mean) is 100; a standard deviation measures the spread of the sample from the mean; generally about 66% of a sample is within one standard deviation from the mean, and about 95% of the sample will be within two standard deviations from the mean. Statistics *Methods and Applications*, Hill, T. & Lewicki, P., StatSoft, Tulsa, OK (2007).

[6] Listing 12.05 (mental retardation) is one of the Listing of Impairments ("the listings") in appendix 1 of subpart P of part 404 of 20 C.F.R. For each of the major body systems the listings describes impairments that the agency considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 416.925.

[7] The Wechsler Intelligence Scale for Children ("WI(SC") is an intelligence test for children between the ages of 6 and 16.

administered by a Virginia Department of Rehabilitative Services staff psychologist, the plaintiff obtained a deficient range full scale IQ score of 65, a deficient range verbal ("VIQ") score of 62, a borderline performance ("PIQ") score of 75, and sub-test scores indicative of the plaintiff's significant comprehension deficiencies, most markedly in the areas of verbal comprehension and concept formation. (R.174.) In the opinion of the examining psychologist, the plaintiff "[did] not appear to be developing the skills necessary to sustain employment." (R.175.)

Although the plaintiff obtained a marginally higher VIQ score of 71 on a short form WASI,[8] test in the Fall of 2002 (at age fifteen), her other scores were consistent with her earlier scores and again demonstrated her "significantly compromised intellectual functioning." (R.183.) At that time, the plaintiff was demonstrating the verbal reasoning ability of a ten year-old, the word definition and non-verbal problem-solving abilities of a seven to seven and one-half year-old, and the abstract reasoning ability of a nine and one-half year-old child. (*Id.*)

At age sixteen and again at age seventeen, educational achievement test results similarly continued to document the plaintiff's performance at "several years below grade level in all areas," most markedly at a second grade level in math and at a fourth grade level in reading comprehension. (R.179-180.) Likewise, at age eighteen, the plaintiff's WAIS-III [9] test and sub-test results also were consistent with those she obtained in 2001 and once again indicated to the testing psychologist that she had been "functioning at this level her entire life." (R.189.)

---

[8] Wechsler Abbreviated Scale of Intelligence ("WASI").

[9] Wechsler Adult Intelligence Scales test "(WAIS-III")" is "the standard instrument in the United States for assessing intellectual functioning." *Atkins v. Virginia*, 536 U.S. 304, 309 n. 5 (2002).

At age twenty, the results of a intelligence testing by Dr. Barry Hensley similarly reaffirmed the plaintiff's full scale, verbal and non-verbal IQ scores to be in the mid-60s. (R218.) Likewise, intelligence and cognitive skills testing also reconfirmed the plaintiff's third/fourth grade reading ability, her fourth grade ability to perform mathematical operations and her multiple cognitive weaknesses, including most markedly in the mental skills necessary to acquire information, to retain previously learned information and to process external stimuli. (R.219.) The results of separate personality and vocational testing by Dr. Hensley additionally demonstrated the plaintiff's significant social and emotional immaturity, dependent personality, "limited ability to understand" her own limitations and her markedly diminished vocational ability. (R216-222.) Based on the combined results of his psychological and vocational testing, Dr. Hensley concluded that the plaintiff would not only have difficulty living independently or managing funds, but she would likely require the assistance of a job coach in order to perform any full-time work activity. (R.221.) In his opinion, without such support the plaintiff's "ability to work . . . on a long term competitive basis [would be], at best, marginal." (*Id*.)

V.     **Discussion**

It is the plaintiff's contention on appeal that the ALJ asked the vocational witness an incomplete hypothetical question and erred by relying on this witness' answer to make the determination that she could perform the light exertional and unskilled job requirements of occupations such as food service worker, cleaner, and laundry worker. (R.31-33.) Specifically, the plaintiff argues

7

that the ALJ's near-exclusive reliance on the functional ability opinions of Dr. Dana Blackmer, a consulting psychologist engaged by the agency, resulted in the posing of a hypothetical question to the vocational witness which neglected to include a number of her non-exertional limitations, including her social immaturity, emotional dependence, inability to work independently on a sustained basis, and diminished cognitive abilities.

Without question, an ALJ must take into account all of an individual's specific limitations when crafting a hypothetical question. *Walker v. Bowen,* 889 F. 2$^d$ 47, 50-51 (4th Cir. 1989). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." *Johnson v. Barnhart,* 434 F.3$^d$ 650, 659 (4th Cir. 2006) (quoting *Walker,* 889 F.2$^d$ at 50) And a failure to do so not only diminishes the relevance and value of any vocational testimony but is error as a matter of law. *Johnson v. Barnhart,* 434 F.3$^d$ at 659 (4th Cir. 2006); *Hancock v. Barnhart,* 206 F.Supp.2$^d$ 757, 767 (WDVa, 2002)

At the hearing, the ALJ solicited testimony from the vocational witness regarding the plaintiff's ability to perform the necessary functions of jobs available in the regional or national economy. (R.31-33.) Although the ALJ included Dr. Hensley's assessment of the plaintiff's reading and math grade-equivalent achievement levels in the hypothetical question posed to the vocational witness, for all practical purposes the question was based solely on the consultive examiner's opinion regarding the plaintiff's work-related functional capacities. (R.31-33.) As a result, the vocational testimony and by extension the ALJ's non-disability finding were direct responses to the list of work-related abilities outlined by Dr. Blackmer. (R.17,31-33.)

This assessment by the consultive examiner was based, however, not on any vocational testing, but solely on the plaintiff's WALS-III intelligence test results and Dr. Blackmer's clinical observations. (R.188-190.) In contrast, the vocational assessment of Dr. Hensley two years later was based on the results of a whole battery of vocationally relevant tests designed to measure objectively the plaintiff's achievement (Woodcock-Johnson III), perceptional integration ability and level of functioning (Bender Gestalt), cognitive impairment (House-Tree-Person Test), and work performance potential (Structured Vocational Evaluation) (*See* R.216-222.)

Had the vocational testimony included consideration of Dr. Hensley's finding that the plaintiff would need the assistance of a job coach as part of any full-time work effort, as the vocational witness acknowledged, such assistance "is not in keeping with competitive work." (R.33.) The Social Security Act does not require a person to prove that she is bedridden or helpless in order to be found disabled, she needs only to demonstrate the inability to perform substantial gainful work [10] that exists in significant numbers. *See Totten v. Califano*, 624 F.2$^d$ 10, 11-12 (4th Cir. 1980). Therefore, unless Dr. Hensley's assessment of the plaintiff's inability to perform regular and sustained employment was properly rejected by the ALJ, the plaintiff has demonstrated her entitlement to SSI benefits in accordance with her application. *See Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) ("If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.") (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966).

---

[10] Substantial gainful activity is defined as "work activity that involves doing significant physical or mental activities . . . ." 20 C.F.R. §§ 416.972(a) and 416.910. And in order to be *gainful activity*, the work activity must be done for pay or for some type of profit, even if that profit is not realized. *See id.* at §§ 416.972(b) and 416.910(b).

As justification for giving "[n]o significant weight" to Dr. Hensley's findings, the ALJ asserted in his decision that there was "[n]othing in the record to suggest that [the plaintiff] had limitations that prevented her from working on a full time basis." (R.17.) This is flatly contradicted by the results of Dr. Hensley's detailed vocational testing regime and is, therefore, an erroneous conclusion, legally insufficient to support the denial of SSI benefits in this case, and error as a matter of law. *See e.g., Williams v. Astrue*, 355 Fed. Appx. 828, 831-832 (5th Cir. 2009); *Chambers v. Astrue*, 2008 U.S.Dist. LEXIS 111743, *24 (WDVa, 2008)

In passing it also merits mention that the ALJ's decisional reliance on the consulting examiner's opinions concerning the plaintiff's work-related abilities ignores completely its questionable evidentiary value in this case. Dr. Blackmer's opinions concerning the plaintiff's work-related functional abilities are neither based on the results of any vocational testing nor, by any measure, can they be said to be well-supported in the record.

Likewise, to the extent the ALJ's adoption of the consultive examiner's opinions and his rejection of Dr. Hensley's vocational findings, or both, are based on the plaintiff's ongoing, albeit limited, work effort over the two years preceding the administrative hearing, such a reliance is misplaced. (*See* R.17). As the ALJ acknowledged in his findings, this work has never been sufficient to be vocationally relevant. (R.12,17.)

Moreover, there are circumstances where a person can be totally disabled for purposes of entitlement even if he or she is has a job. *See Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003).

In this case, with the exception of vocational testimony given in response to the ALJ's hypothetical question, the record contains nothing to suggest that the plaintiff's limited work effort at a sandwich shop is inconsistent with her Dr. Hensley's test results and finding. *Cf. Harris v. Barnhart*, 356 F. 3$^d$ 926, 930 (8th Cir. 2004). And as noted previously, Fourth Circuit president does not allow an ALJ to base a denial of benefits in this or any case on an incomplete hypothetical question concerning plaintiff's ability to perform steady work. *Walker v. Bowen,* 889 F.2$^d$ 47 (4th Cir. 1989); *see also Batts v. Sullivan*, 818 F.Supp. 138 (EDNC, 1993): *Edwards v. Bowen*, 672 F. Supp. 230 (EDNC, 1987).

## VI. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is not supported by substantial evidence;

2. The ALJ's non-disability finding was based on an incomplete hypothetical question;

3. The ALJ's non disability finding is not supported by substantial evidence;

4. The vocational expert in the instant case has confirmed that the plaintiff's need for a job coach in order to attempt full-time employment would exclude any substantial gainful employment alternatives;

5. The plaintiff has met her burden of proving a disabling mental condition as alleged in her SSI applications; and

6. The final decision of the Commissioner should be reversed.

## VII. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered REVERSING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the plaintiff, DENYING the Commissioner's motion for summary judgment, and REMANDING this case solely for the purpose of calculating and paying benefits consistent with this report and recommendation.

Should the remand of this case result in the award of benefits, plaintiffs counsel should be granted an extension of time pursuant to Rule 54(d)(2)(B) within which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the agency; provided, however, any such extension of time **would not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act**

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VIII.     Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 1st day of June 2010.

                                               /s/   *James G. Welsh*
                                              United States Magistrate Judge